# UNITED STATES DISTRICT COURT

### for the



United States Courts
Southern District of Texas
FILED

JUN 2 0 2016

David J. Bradley, Clerk of Court

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

2915 Legend Hill Drive
Katy, TX 77494

)
)
)
)
)
)

Case No.

DENIED
4rs  6/21/16
H16-925 M

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

2915 Legend Hill Drive, Katy, TX 77494 (see attachment A)

located in the _____ **Southern** _____ District of _____ **Texas** _____ , there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT B (PROPERTY)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 USC 1344 | BANK FRAUD (felony) |
| 18 USC 1341 | MAIL FRAUD (felony) |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT OF PROBABLE CAUSE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Special Agent Ryan Salinas**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

City and state:  **HOUSTON, TEXAS**

_____
*Judge's signature*

**Stephen Smith United States Magistrate Judge**
*Printed name and title*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Ryan Salinas, upon being duly sworn, declare under penalty of perjury and say as follows:

### AFFIANT

I am employed as a Special Agent by the U.S. Department of Veteran's Affairs, Office of Inspector General, Criminal Investigations Division (VA/OIG) and assigned to the Houston Resident Agency, Houston, TX. I have been in my current position since May 2013. Previously, I was employed by the U.S. Department of Education, Office of Inspector General, Office of Investigation Services (ED/OIG), in Dallas, TX, from July 2010 through May 2013. Prior to my employment with ED/OIG, I worked for the U.S. Postal Inspection Service (USPIS) in Miami, FL, from January 2006 through July 2010. During my ten years of federal law enforcement experience, I have participated in numerous searches, including searches involving fraud and corruption. I have received specialized training in the investigation of fraud provided by USPIS, ED/OIG, and VA/OIG. I have participated in numerous investigations involving the use and execution of federal search warrants, including cases involving fraud and financial crimes.

### LOCATIONS TO BE SEARCHED

This affidavit is made and submitted in support of an application for a warrant to search the following location within the Southern District of Texas: a residence located at 2915 Legend Hill Drive, Katy, TX 77494 (SUBJECT LOCATION). The subject location is more particularly described in attachment A.

1

## OFFENSES

Agents and officers employed by the VA/OIG, USPIS, U.S. Department of Social Security Administration, Office of Inspector General, and Houston Police Department (HPD) are conducting this investigation jointly. Statements contained in this affidavit are based, in part, on my experience and training as a federal law enforcement officer, my personal participation in this investigation, through interviews with and analysis of reports submitted by other Federal Agents and the Houston Police Department, and based on information from witnesses. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish that there is probable cause that evidence of the following crimes will be found in the premises named herein, concerning the individual named in the probable cause section who has committed the following federal FELONY offenses:

A. Mail fraud, 18 U.S.C. 1341, whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, places in any post office or knowingly causes to be delivered by mail any matter or thing, shall be imprisoned for up to 20 years and fined up to $250,000.

B. Bank Fraud, 18 U.S.C. 1344, whoever knowingly executes or attempts to execute a scheme or artifice to defraud a financial institution or to obtain any money owned by or under the control of a financial institution by means of false or fraudulent pretenses or promises, shall be fined not more than $1,000,000 or imprisoned for not more than 30 years or both.

## ITEMS TO BE SEIZED

The items sought constitute fruits, proceeds, evidence, and instrumentalities of violations of federal felony offenses and the underlying state offenses all as listed above in paragraph three. Further based on my training and experience investigating federal fraud crimes, along with that of other investigators, we know individuals, such as Edgar Avila (a.k.a Michael Mendez, Edgar Michael Avila-Mendez, and Michael AvMen) (hereafter referred to as AVILA) maintain multiple identities and that they keep evidence of these identities for years or decades in order to support various fraud schemes. Affiant has probable cause to believe that AVILA has used multiple identities over a period of at least three years and that he continues to provide false information as part of schemes to defraud companies, individuals, and banks. Affiant has probable cause to believe that AVILA keeps and maintains records, documents, and the fruits of his crimes at 2915 Legend Hill Drive, Katy, TX 77494. Affiant knows that AVILA used the address during one of his fraud schemes in which he provided false documentation to a fraud victim and it is believed that AVILA continues to use the residence to keep false documents and the means to produce false documents through use of computers, printers, and other electronic devices, such as I-phones, blackberrys, and other electronic storage devices. In addition, material and contraband used to carry out the illegal activity, such as false identification documents, false identification cards, bank account information, lists of potential victims, are kept in tangible documents and in the form of electronic storage devices which are commonly kept in vehicles, garages, and outbuildings that may be located at 2915 Legend Hill Drive, Katy, TX, 77494. The items sought are more specifically described in Attachment B.

Based on my training, experience, and conversations with fellow law enforcement officers I know that that it is customary for individuals involved in fraud to operate their schemes

from a local location or residence. As a result of such day to day operations from a local residence, defendants engaged in fraud maintain and accumulate certain types of records in order to function in the financial aspects of their lives and to otherwise continue their day to day operations. These records include but are not limited to the items listed above in paragraph four (and attachment B) but also records that are stored by individuals in secure locations, such as safes and filing cabinets. In this case, the defendant acquired over $55,000 through fraud and affiant has probable cause to believe that the currency or records of the disposition of the benefits are in the defendant's residence. Also, based upon information provided by Crestmark Mortgage, Affiant has reason to believe that AVILA continues to use the residence and continues to provide fraudulent information from the residence to perpetuate his fraud scheme. Affiant has reason to believe that AVILA maintains multiple identities and that he holds on to materials for years in order to maintain the false identities that he uses in his fraud schemes.

## PROBABLE CAUSE

### SUMMARY

Affiant, Ryan Salinas, has probable cause to believe that Edgar Avila (a.k.a Michael Mendez, Edgar Michael Avila-Mendez, and Michael AvMen) (hereafter referred to as AVILA) was involved in two separate fraud schemes. A bank fraud scheme involved the use of false identifiers and a false employment history to obtain a home loan of over $423,000 from Crestmark Mortgage that was guaranteed by the U.S. Department of Veterans Affairs (VA) (bank fraud). The second fraud scheme involved the use of similar fraudulent data to purchase an automobile from Audi Central Houston for over $72,000 (mail fraud). The defendant then created a fake auto repair company and a fake mechanic's lien and <u>mailed</u> an item, allegedly the notice of sale, to Audi Central Houston with a return receipt requested "green card". After the fake sale on the

4

mechanic's lien, AVILA, utilizing the "green cards" as proof of notice of sale, caused a new title to be <u>mailed</u> to himself, which allowed him to sell the vehicle to a legitimate dealer for about $55,000.

## BANK FRAUD
### (FRAUDULENT INFORMATION FOR HOME LOAN)

Affiant initiated an investigation into the activity of AVILA in April of 2015 based on information provided by the Houston Police Department (HPD).  During HPD's investigation of an unrelated automobile fraud scheme it was discovered that Edgar Michael AVILA-Mendez (AVILA), provided false information to obtain a $423,320 VA[1] guaranteed home loan from Crestmark Mortgage Company (Crestmark) for a residential property located at 2915 Legend Hill Drive, Katy, TX 77494.[2]

On January 22, 2014, a Uniform Residential Loan Application was submitted by AVILA and his wife to finance a residence located at 2915 Legend Hill Drive, Katy.  AVILA made a number of material false statements to obtain the loan and he provided false documents to support the false statements.[3]  AVILA stated on the loan application that he worked for AvMen Entertainment located at 924 Town and County 800, Houston for a year and a half as a line producer, with a salary of $13,600 a month.  He also stated that he attended Devry College of Business (Devry) from September 2009 through May 2013 to account for his history before working at AvMen.

---

1 The Defense Personnel Records Information System shows that AVILA served in the reserves.
2 The investigation showed that AVILA used this location as his residence and obtained a Temporary Texas ID card listing 2915 Legend Hill Drive as his address in November 2014.
3 Affiant has reason to believe that the false documents AVILA used to support the fraud scheme are located at 2915 Legend Hill Drive, Katy, TX and that AVILA has held on to the materials for years.

## FALSE REPRESENTATIONS OF EMPLOYMENT BY AVILA

In January 2014, a verification of employee (VOE) form was faxed from AvMen to Crestmark Mortgage Company.[4]   The VOE indicates that AVILA earned approximately $6,800 up to January 10, 2014, and approximately $183,000 for fiscal year 2013.   The VOE indicates AVILA completed an internship for AvMen Entertainment from July 2012 through December 2012.   The loan file also contained pay stubs for AVILA from AvMen Entertainment from November 1, 2013 through December 27, 2013.

Affiant was unable to find a legitimate business under the name AvMen Entertainment, but it was discovered that AVILA created the entity as part of his fraud scheme.   Affiant checked with the Texas Secretary of State and found that no businesses or individuals were on file using the name of AvMen Entertainment.   However, Affiant discovered an assumed name certificate filed in August of 2010 with the Harris County Clerk establishing that Michael AvMen of 26618 Boulder Cove Court, Katy, TX would be doing business as AvMen Entertainment, located at the same address.[5]   Affiant notes that 26618 Boulder Cove Court, Katy is the same address listed on AVILA's Texas driver's license copy, which was contained in the home loan documentation of Crestmark.[6]

Affiant also found that AVILA's loan file with Crestmark contained pay stubs for AVILA from AvMen Entertainment from November 1, 2013 through December 27, 2013.   The paystubs appeared to be fraudulent because they did not contain detailed information regarding AVILA's deductions, such as medical, dental, life insurance, and retirement.   The paystubs did not contain

---

4 The loan originator is listed as Robin Gifford of Crestmark Mortgage Company, 13100 Northwest Freeway, Suite 200A, Houston, TX 77040.   The VOE was requested in order to approve the loan. The loan application has two signatures for borrowers AVILA and Mandy Avila.
5 It is significant to note that AVILA uses his business entities and false identities over very long periods of time. The filing in 2010 shows that he maintained records for AvMen for at least 4 years.
6 The business address of AvMen and residence of AVILA show the company is an alter-ego of the AVILA.

6

earned vacation time or sick leave and the stubs indicated that AVILA worked throughout the entire holiday season without any vacation or sick time taken.   Affiant has reason to believe that AVILA created the pay stubs and that he has held onto the documentation regarding AvMen Entertainment for use in his fraud schemes.

As stated earlier, Affiant discovered that AVILA and Michael AvMen are the same person. Affiant verified this conclusion through several sources.   On or about July 7, 2015, Affiant discovered a Twitter account for Michael AvMen, which had a photograph of AVILA.   The investigation further revealed a website associated with AvMen Entertainment at http://bcmavila.wix.com/avmen-entertainment.    The website did not provide an address for the business, but a review of the website revealed multiple photographs of AVILA.   Michael AvMen also appeared in a YouTube video at https://www.youtube.com/watch?v=YelSfvoPwYw.   The individual appearing in the YouTube video as Michael AvMen appears to be AVILA based on his Texas driver's license photos.   Affiant has reason to believe that AVILA uses computers and electronic devices to support the existence of his "fake" company and that physical documents and electronic files are located and maintained at 2915 Legend Hill Drive, Katy, TX 77494, which is the property he purchased though a fraud scheme.

Affiant also checked to determine if AVILA received income from any other company which approached the $13,000 per month indicated on his loan application.   AVILA claimed that he had two bank accounts in his loan application; USAA and JP Morgan Chase.   A review of both accounts by Affiant did not reveal any income associated with AvMen Entertainment or income approaching $13,000 per month.

FALSE REPRESENTATION REGARDING EDUCATION

AVILA claimed that he was an intern at AvMen Entertainment and before his employment he attended Devry College of Business and Technology.   In January 2014, to bolster his claim, AVILA provided a transcript from the college which contained the signature of John J. Getek, registrar.   The transcript is dated November 19, 2012.

The investigation showed that John J. Getek was not the registrar for Devry.   However, in 2001, Getek was the Deputy Inspector General of Audit for the U.S. Department of Labor, Office of Inspector General.   Affiant discovered that digital signatures for Getek were available online from his annual reports to Congress and Affiant believes the digital online signature of Getek resembles the signature on AVILA's Devry transcript. Affiant also has reason to believe that AVILA keeps the transcripts for use in other fraud schemes[7] and that the materials are located at 2915 Legend Hill Drive, Katy, TX 77494.

In March 2015, AVILA defaulted on his loan.   In September 2015, AVILA's mortgage lender modified AVILA's loan and negotiated a new payment plan for AVILA to avoid foreclosure and future defaults.   The modification was based on a statement from AVILA that he was diagnosed with "cephalic neuralgias" and "Bell's palsy".   AVILA claims that the illness caused him to lose his job and that his current job does not pay him the same.   The application has signatures for both Edgar AVILA and Mandy Avila.   While Affiant cannot rule out some type of medical condition, Affiant has personal knowledge that AVILA was arrested by the Houston Police Department for fraud in 2015, which is the more likely reason for his sudden lack of income.

---

7 Affiant has personal knowledge that AVILA used the fraudulent Devry transcript in a fraud scheme to obtain a vehicle in 2014, which shows that he maintained the documents for use in multiple schemes. (See probable cause statement for fraud involving Audi RS5.)

The investigation into the loan obtained by AVILA shows that he submitted false information related to his income and education. The false information was material and substantially changed AVILA's debt to income ratio. As such, Crestmark Mortgage Company and the U.S. Department of Veteran's Affairs unknowingly relied on the false information submitted by AVILA to fund his home loan and renew his loan in September 2015.

## MAIL FRAUD
(Fraudulent Information provided to purchase a vehicle.)

The investigation into AVILA revealed that he used a similar fraud scheme to obtain an automobile valued at over $72,000. On January 13, 2014, a Consumer Credit Application was completed for Edgar AVILA, residing at 2104 Canal Street C127, Houston.[8] The application was initially declined, and the comments indicated that "red flags" needed to be cleared. To certify the information for the loan, AVILA provided a fake social security card, a false Texas driver's license and a fake Devry University transcript. On or about January 16, 2014, Edgar AVILA was allowed to purchase a 2013 Audi RS5, from Audi Central Houston, 2120 Southwest Freeway, Houston, Southern District of Texas, for $72,912. The Application for a Texas Title lists Edgar AVILA with a Texas driver's license number of 17142195.

On February 13, 2015, T. Harding, Sergeant, HPD met with Emmanuel Agramonte. Mr. Agramonte was the sales associate, who assisted AVILA with the purchase of the Audi RS5. Mr. Agramonte identified Edgar AVILA in a photo spread as the purchaser of the Audi.

### AVILA's FAKE COMPANY

On July 30, 2014, an assumed name record was filed with the Fort Bend County Clerk for 'Creative Customs" in Richmond, Texas. The owner was listed as Performance Auto Group and

---

8 During this same time period, AVILA was providing false information to Crestmark to purchase 2915 Legend Hill Drive, Katy, TX 77494 for over $423,000.

Michael Mendez as the officer.[9]   On or about August 21, 2014, a private mailbox application was completed by Michael Mendez, utilizing a Venezuelan passport number 034669361, for "Creative Customs".   The Venezuelan passport 034669361 was in the name of Edgar Michael AVILA-Mendez and contained a photo that Affiant recognized as AVILA.

On or about April 9, 2015, AVILA was arrested by HPD based on warrants related to criminal case numbers 145685901010-3 and 146090901010-3.   During the arrest, HPD found and documented AVILA's possession of a Venezuelan passport 034669361 in the name of Edgar Michael AVILA-Mendez.   This is the same passport utilized to open the private mailbox at "Creative Customs" and to verify AVILA's identity for a notary on his assumed name record for "Creative Customs" that was filed with the Harris County Clerk.   Affiant also has personal knowledge that the alleged location of "Creative Customs" at 19840 FM 1093, Richmond, TX 77407 is actually a Cube Smart self-storage business.

## CLEANING THE TITLE TO THE AUDI RS5

On September 6, 2014, "Creative Customs" allegedly performed repairs and modifications to the 2013 Audi RS5 totaling $65,680.   On or about October 1, 2014, "Creative Customs" mailed an envelope, allegedly containing a legal notice of collections on the fake debt, to Edgar AVILA, via the United States Postal Service (USPS) by certified mail.   Another envelope, allegedly containing the legal notice of collections on the fake debt owed by AVILA, was mailed to Audi Financial Services.[10]   Affiant knows that subjects can mail empty envelopes with certified mail return receipts and then later claim that some item was included in the envelope and provide the executed signed certified mail return receipt as alleged proof.

---

9 Michael Mendez is Edgar AVILA, Michael AvMen, and Michael Edgar Avila-Mendez.
10 Affiant obtained the USPS tracing information for both notices to verify that the mailings occurred.

On November 6, 2014, an Application for a Texas Certificate of Title was filed based upon a mechanic's lien foreclosure for the 2013 Audi RS5. "Creative Customs", after providing notification to Edgar AVILA and Audi Financial Services sold the 2013 Audi RS5 for $5,000 to Michael Mendez (aka AVILA). On or about November 13, 2014 a "clean" Texas Certificate of Title was issued to Michael Mendez (aka AVILA) for the 2013 Audi RS5 and sent by mail. Affiant has reason to believe that AVILA retained the documents pertaining to "Creative Customs" for use in future fraudulent activity and that the documents are located at 2915 Legend Hill Drive, Katy, TX 77494.

SALE OF THE AUDI RS5

On or about November 18, 2014, Michael Mendez (aka AVILA) took the 2013 Audi RS5, to Westside Lexus, 12000 Katy Freeway, Houston. A photocopy of the seller's temporary identification card was made. The temporary identification card is for Edgar Michael AVILA-Mendez of 2915 Legend Hill Drive, Katy, TX 77494.[11]

On November 25, 2014, Westside Lexus issued a check in the amount of $55,000 to Michael Mendez (aka AVILA) for the 2013 Audi RS5. On December 4, 2014, Billy Bryant, a Westside Lexus employee identified AVILA as the person who sold him the 2013 Audi RS5.

**ELECTRONIC EVIDENCE**

As described in Attachment B, Affiant seeks permission to search and seize records associated with the schemes to defraud that might be found at 2915 Legend Hill Drive, Katy, TX 77494, in whatever form they are found. I know from my training, experience, and conversations with computer forensic specialists that electronic, magnetic, or optical data are typically stored on many devices to include, but not limited to hard drives, CDs, DVDs, tapes floppy disks, Universal

---

11 This is the address of the home Edgar AVILA purchased through Crestmark and the address to be searched.

11

Serial Bus (USB) drives, cameras, MP3 players, Personal Digital Assistants (PDA), iPhones, iPods, cell phones, Blackberries, gaming systems, or memory cards.   There are also a variety of media devices available to the general public that a creatively designed to conceal the storage of data such as pens, watches, key chains, necklaces, rings, bracelets, knives, toys, win corks, clothing, and shoes.   These unique items will normally have some type of computer interface connection on them such as a USB, fire-wire or wireless network card that allows them to connect to a computer or computer related device for the transfer of data.   Affiant submits that if a computer or electronic medium is found at 2915 Legend Hill Drive, Katy, TX 77494, there is probably cause to believe those records will be stored in that computer or electronic medium, for at least the following reasons:

     a.   Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost.   Even when files have been deleted, they can be recovered months or years later using readily available forensic tools.   When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.

     b.   Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space (which is space on the hard drive that is not currently being used by an active file) for long periods of time before they are overwritten.   In addition, a computer's operating system may also keep a record of deleted data in a

12

"swap" or "recover" file.

c. Similarly, files that have been viewed via the Internet are typically automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

Based upon my knowledge, training, and experience, I know that searching for information stored in computer often requires agents to seize most or all electronic storage devices to be searched later by a qualified computer expert in a laboratory or other controlled environment. This is often necessary to ensure the accuracy and completeness of such data, and to prevent the loss of the data. Additionally, to properly examine those storage devices in a laboratory setting, it is often necessary that some computer equipment, peripherals, instructions, and software be seized and examined in the laboratory setting. This is true because:

a. The volume of evidence maintained on computers can make it impractical for a search to be done on-site. Computer storage devices can store the equivalent of millions of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to peruse all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be unreasonable and invasive to attempt this kind of data search on-site.

13

b.   Searching computer systems for criminal evidence sometimes requires highly technical processes requiring expert skill and properly controlled environment.   In all cases it is necessary to determine that no security devices are in place that could cause the destruction of evidence during the imaging or search.   The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to analyze the system and its data.   In any event, however, data search processes are exacting scientific procedures designed to protect the integrity of the evidence and to recover even "hidden," erased, compressed, password-protected, or encrypted files. Since computer evidence is vulnerable to inadvertent or intentional modification or destruction (both from external sources to hidden destructive codes imbedded in the system as a "booby trap"), a controlled environment may be necessary to complete an accurate analysis.

Searching computer systems for the evidence described in Attachment B may require a range of data analysis techniques.   In some cases, it is possible for agents and analysts to conduct carefully targeted searched that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence.   In other cases, however, such techniques may not yield the evidence described in the warrant.   Criminals can mislabel or hide files and directories, encode communications to avoid using key words, attempt to delete files to evade detections, or take other steps designed to frustrate law enforcement

14

search for information.   These steps may require VA OIG agents or employees, U.S. Postal

Inspection Service agents or employees, and other law enforcement or other analysts with

appropriate expertise to conduct more extensive searches, such as scanning areas of the disk not

allocated to listed files or peruse every file briefly to determine whether it falls within the scope of

the warrant.   In light of these potential difficulties, agents and law enforcement intends to use

whatever data analysis techniques appear necessary to locate and retrieve the evidence described

in Attachment B.

The accompanying software programs will also need to be seized because certain software

can be proprietary, meaning that data can only be interpreted by that software and is sometimes

impossible to examine otherwise.   Examination of this data will be necessary to determine if it

contains information pursuant to Attachment B.   Instruction manuals, systems documentation,

notes, or any other type of correspondence potentially relating to any computer or media device

will also need to be seized because it could contain passwords, usernames, instructions, hints,

codes, or keywords that could be necessary to properly operate and interpret the computer or

media being examined.

In light of these concerns, I request the Court permission to seize the computer hardware

(and associated peripherals) that are believed to contain some or all of the evidence described in

the warrant, and to conduct an off-site search of the hardware for the evidence described.

## CONCLUSION

Based on the aforementioned facts, Affiant has probable cause to believe that AVILA was engaged in multiple fraud schemes (Bank Fraud & Mail Fraud) in the Southern District of Texas. Affiant has probable cause to believe that items such as those described above and in Attachment B are maintained by AVILA for years for use in continuing fraud schemes and that the items are located at 2915 Legend Hill Drive, Katy, TX 77494.

_____
Ryan Salinas
Special Agent, VA OIG

Sworn to and Subscribed before me this _____, day of _____, 2016 and I find Probable Cause.


_____

United States Magistrate Judge
Southern District of Texas

16

## ATTACHMENT "A"

2915 Legend Hill Drive, Katy, TX 77494

A RESIDENTIAL HOME

The subject location is a residential home located at 2915 Legend Hill Drive, Katy, TX 77494, including all living areas, bedrooms, kitchens, bathrooms, laundry rooms, closets, attics, garages, and any and all structures and/or vehicles located within the curtilage of the property.

The property is described as follows:

-   A two story, residential home with red brick and a brown stone accent exterior with brown trim and a shingled roof.

-   The driveway leads to two brown garage doors. The garage doors face the Southeast. A concrete walkway leads away from the driveway to a wooden door with a large glass panel with glass sidelights. The front door faces the Southeast. The garage doors and front door are parallel to Legend Hill Drive. Two porch lights are located at the front of the residence on both sides of the front door.

-   The residence to be searched is located East of Highway 1463 and North of Crossover Road on the Northeast side of Legend Hill Drive.

-   The number 2915 is vertically displayed on the wall facing Legend Hill Drive between the front door and the driveway in white font in a black rectangle.

-   See attached photographs of the subject location.

## SUBJECT LOCATION – 2915 LEGEND HILL DRIVE, KATY, TX 77494



## ATTACHMENT B

Your Affiant seeks to obtain the following property:

a. Documents related to the fraud/theft schemes;

b. Books, records, receipts, notes, ledgers, money orders, and other papers relating to the theft or fraud schemes.

c. Documents related to the importation, transportation, ordering, sale, purchase, and distribution of assets to or from the United States.

d. Contraband, such as U.S. Currency, bank records, credit card receipts, or other evidence of a fraud scheme which may be kept in secure locations to conceal the items from law enforcement authorities. This may include personal identification information of Mr. AVILA or the victims of his fraud schemes such as Perry Homes, Crestmark, Cornerstone, Audi, or Westside Lexus.

e. Caches of mail, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money such as the approximately $55,000 fraudulently taken from Westside Lexus.

f. Any and all contracts, documentation, or mail associated with a certified mail receiving agency (CMRA), also known as a UPS Store or Mailbox Etc., which Mr. AVILA utilized during the course and scope of his schemes to defraud.

g. Any and all documentation related to Mr. AVILA's ownership of a business, including but not limited to applications to establish a business with county clerks, applications to establish a business with the Texas Secretary of State, business filings, pay stubs, ledgers, bank statements, payroll, and mail addressed in the name of businesses.   In particular, any and all business documentation evidencing Mr. AVILA's ownership of AvMen Entertainment, Creative Customs, or any additional automobile repair business.

f. Foreign and domestic bank information, and the attendant documents, such as securities, cashier checks, money drafts, letters of credit, shell corporations, business fronts, and attorneys services to acquire and conceal expensive assets purchased with proceeds from the fraud schemes;

g. Records of bank accounts, brokerage accounts, cloud or data storage accounts, and records of offsite locations to store records including safety deposit box keys, records, and receipts, rental agreements for storage facilities, records of mail and answering services including telephone pagers, and that such items are secured within their residences for easy access;

h. Signature stamps, notary stamps, or other means of producing signatures.

i. **Computers** and/or to store records and e-mails, ledgers, notes, names, addresses, telephone numbers and personal information regarding stolen social security benefits. This includes devices used to prepare false documents, such a printers and copiers as well as computer hardware, including but not limited to, any data-processing devices such as central processing units, monitor, self-contained laptop, notebook or tablet device, I-tablets, I-phones, data storage devices such as fixed or hard disks, portable backup drives, floppy discs, thumb drives, optical storage devices, flash drives, CD's and DVD's, or other electronic device.

j. **Cell phones/mobile phones**, which Mr. AVILA used to communicate by e-mail and voice during his various fraud schemes.

k. Computer software including programs to run operating systems, applications, and utilities.

l. Documentation related to computer software, instructions, guides, user names, and computer or online passwords.